**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PHILIP ROBERT CRITCHLEY, JR.,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **A-06-CA-227  JN** |
| | § | |
| **RICK THALER, Director Texas Dept.** | § | |
| **of Criminal Justice, Institutional Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE JAMES R. NOWLIN
        SENIOR UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Petition For a Writ of Habeas Corpus By a Person in State Custody, and Memorandum in Support (Clerk's Dkt. #1); Respondent Thaler's Answer with Brief in Support (Clerk's Dkt. #27); Critchley's Objections to Respondent's Answer (Clerk's Dkt. #30); and  Petitioner's Addendum to Previously Filed Writ of Habeas Corpus § 2254 (Clerk's Dkt. #31). For the reasons set forth below, Petitioner's application for writ of habeas corpus should be denied.

## I.  PROCEDURAL HISTORY

Petitioner Philip Robert Critchley, Jr. ("Critchley") was found guilty by a jury of four counts of sexual assault in the 22nd Judicial District Court of Hays County, Texas.  On April 21, 1998  the

jury imposed a sentence of twenty years imprisonment. On the motion of defense counsel, Critchley was subsequently granted a new trial. On retrial, Petitioner was convicted by a jury of two counts of sexual assault. On November 16, 2000 the trial court assessed a sentence of twenty years imprisonment.

Petitioner's conviction was affirmed on direct appeal. *Critchley v. State*, No. 03-01-00073-CR, 2001 WL 1583662 (Tex. App.–Austin Dec. 13, 2001, pet. ref'd). Critchley also sought state post-conviction relief in several applications for writ of habeas corpus. In the only application reviewed on the merits, the Texas Court of Criminal Appeals denied relief without written order. *Ex parte Critchley*, No. 52,298-05 (Tex. Crim. App. Feb. 8, 2006).

Petitioner thereafter filed this federal petition for habeas corpus relief. This Court initially denied the petition sua sponte as untimely. Critchley appealed. The Fifth Circuit reversed. *Critchley v. Thaler*, 586 F.3d 318, 321 (5th Cir. 2009). Respondent has filed an answer and the petition is now ripe for review on the merits.

## II. BACKGROUND

In reviewing Petitioner's conviction, the Texas appellate court summarized the background as follows:

> The complainant spent the night in question at the home of [Critchley] and her grandmother. She took a change of clothes with her on the visit. Upon returning to her mother's home the next day, the complainant reported that [Critchley] had sexually assaulted her. The complainant's mother called the police and took her daughter to a hospital for examination. She said she placed the complainant's extra clothes, including a pair of panties, in a bag and took them with her to the hospital, where she gave the bag to the police. The panties and other clothes the complainant was wearing when she returned from [Critchley's] house, which she was still wearing when she went to the hospital, were also taken by the police at the hospital. The complainant's mother was uncertain whether State's exhibit one was the pair of panties the complainant was wearing when she went to the hospital or the extra pair.

2

Deputy Sheriff Deborah Elsbury went to the hospital in response to the reported
sexual assault. She identified State's exhibit one as the panties the complainant was
wearing at the hospital. Elsbury said she saw the complainant take off the panties and
hand them to a nurse, who placed them in an evidence bag which was then sealed,
labeled, and given to Elsbury. Elsbury testified that she took this sealed bag to the
sheriff's department and placed it in storage. The next day, Blanco Police Officer
David Cruz took the sealed bag containing the panties to the Department of Public
Safety laboratory in Austin for analysis. Will Young, the department's forensic DNA
analyst, identified State's exhibit one as the panties he received from Cruz, still in a
sealed bag, and on which he found the semen stains containing DNA identical to
appellant's known DNA..

*Critchley,* 2001 WL 1583662, at *1.

### III.  ISSUES RAISED

Critchley raises five issues in seven grounds for relief.  Specifically, he contends: (1) his

conviction violates the Double Jeopardy Clause; (2) the trial court violated Texas Rule of Appellate

Procedure 21.8(b); (3) the prosecutor knowingly presented perjured testimony at trial; (4) the

evidence is insufficient to support his conviction; and (5)  he received ineffective assistance of

counsel during the motion for new trial, at trial and on appeal.

### IV.  STANDARD OF REVIEW

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective

Death Penalty Act of 1996.  *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, Pub. L.

104-132, 110 Stat. 1214 (1996) ("AEDPA").  Under the AEDPA, a habeas petitioner may not obtain

relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless

he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court.  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000).  An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A state court decision is entitled to deference unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2001).  A presumption of correctness attaches to factual determinations made by a state court. 28 U.S.C. § 2254(e)(1).  A habeas petitioner must rebut this presumption by clear and convincing evidence.  *Id.*; *Ladd v. Cockrell*, 311 F.3d 349, 352 (5th Cir. 2002).

## V.  ANALYSIS

### A.  Double Jeopardy

Petitioner first contends his conviction violated his protection against double jeopardy. Critchley claims his second trial impermissibly permitted the prosecution to present additional evidence supporting his guilt.  According to Petitioner, this violated his protection against double jeopardy because the evidence presented during the first trial was insufficient to support his conviction.

The double jeopardy clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This protection applies both to successive punishments and to successive prosecutions for the same

4

criminal offense. *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2855-56 (1993). "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S. Ct. 2141, 2147 (1978) (once defendant obtained unreversed appellate opinion concluding evidence presented at trial was insufficient to support conviction, second trial barred by Double Jeopardy Clause). Thus, the grant of a motion for new trial based on insufficiency of the evidence triggers the Double Jeopardy Clause and bars retrial. *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997) (citing *Hudson v. Louisiana*, 450 U.S. 40, 40-45, 101 S. Ct. 970, 970-73 (1981)) However, in the successive prosecution context, a defendant's double jeopardy concerns arise only after some event which terminates the original jeopardy. *Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 3086 (1984). *See United States v. Garcia*, 567 F.3d 721, 730 (5th Cir. 2009) (retrial following mistrial did not violate protection against double jeopardy) *United States v. Mize*, 820 F.2d 118, 120 (5th Cir. 1987) (retrial following appellate reversal not barred where reversal not based on evidentiary insufficiency); *Vardas v. Estelle*, 715 F.2d 206,213 (5th Cir. 1983) (prior trial does not preclude retrial when conviction set aside on procedural grounds)..

In moving for a new trial following the first trial in the state court, Critchley argued the verdict was contrary to the law and evidence in that he received ineffective assistance of counsel. Specifically, the motion asserts Critchley's counsel: (a) conducted an ineffective voir dire examination of the jury panel; (b) made no opening statement; (c) failed to obtain and produce expert testimony to rebut the prosecution's scientific evidence; (d) failed to adequately develop a theory of defense concerning other possible perpetrators; (e) failed to move for judgment of acquittal based

on insufficiency of the evidence; (f) failed to present a full and effective closing argument; (g) failed to object to speculative hearsay evidence at the punishment phase of the trial; and (h) failed to present any evidence on behalf of Critchley at the punishment phase of the trial. (Clerk Rec. 1 at 62-64). The order granting the motion is silent as to the reason(s) for granting the motion. (*Id*. at 66).

A review of the transcript of the hearing on the motion for new trial reveals the judge began the hearing by noting additional instances in which he believed counsel at the original trial failed to adequately represent Critchley. *Ex parte Critchley*, No. 52,298-03 at 148-51 (Tex. Crim. App. Aug. 31, 2005).[1]   Counsel for Critchley also repeated that the basis of the motion for new trial as ineffective assistance of counsel. (*Id*. at 158-59). Although the judge did chastise the prosecutor for failing to obtain additional scientific evidence, he also commented that the failure to present such evidence should have been "ripe fodder" for defense counsel. (*Id*. at 163-64). The judge additionally characterized the prosecution's case as "poorly presented" but noted the defense's case "was not presented at all." (*Id*. at 166).  Finally, in granting the motion for new trial, the judge stated "the Court specifically finds that there is a reasonable possibility that had the Defendant received adequate effective assistance of counsel there would have been a different result" (*Id*. at 166-67). Accordingly, it is abundantly clear that Critchley was granted a new trial based not on the insufficiency of the evidence presented by the prosecution, but on the inadequacies of his defense counsel's performance.  He has failed to show that a successive prosecution in these circumstances would be a violation of his protection against double jeopardy. *See Deloney v. Estelle*, 713 F.2d 1080, 1087 (5th Cir. 1983) (absent reversal of conviction based upon insufficiency of the evidence,

---

[1]Although a copy of the transcript of the hearing was not separately included in the state court record provided by Respondent, a transcript of the hearing was included by Critchley in his third application for state habeas relief.

retrial of defendant is not barred).  Accordingly, Petitioner is not entitled to federal habeas relief on this basis.

### B.  Trial Court Error

Petitioner contends the trial court violated Texas law during the hearing on the motion for new trial.  Specifically, he claims the trial judge violated TEX. R. APP. P. 21.8(b) by commenting on the evidence at the hearing.  Rule 21.8 stated, in pertinent part, "[i]n ruling on a motion for new trial, the court must not summarize, discuss or comment on the evidence."  TEX. R. APP. P. 21.8(b) (Vernon 1997).[2]  According to Critchley, the judge's comments during the hearing on the motion for new trial were improper because they violated the strictures of Rule 21.8.  He further maintains the judge's error afforded the prosecutor an opportunity to correct evidentiary errors committed during the first trial.

Critchley is not, however, entitled to federal habeas relief on this claim.  Petitioner does not allege the trial judge's actions rose to the level of a federal constitutional violation.  Rather, he addresses the judge's actions solely as a violation of state law.  This is an insufficient basis upon which to grant federal habeas relief.  *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) (federal habeas court reviewing state conviction must find constitutional error at trial or direct review level to issue writ); *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994) (state prisoner seeking federal habeas review of conviction must assert violation of federal constitutional right).  Petitioner has not, therefore, shown he is entitled to federal habeas relief on this basis.

---

[2]The rule has since been amended and no longer includes this provision.

7

### C. Perjured Testimony

Critchley also asserts he is entitled to habeas relief because the prosecutor knowingly presented perjured testimony at trial. Specifically, he complains that the victim, the victim's mother, a sheriff's deputy, a DNA analyst, and a police detective all provided perjured testimony with the knowledge of the prosecutor.

Due process is violated when the government knowingly elicits, or fails to correct, materially false statements from its witnesses. *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). To merit relief on this basis, Critchley must show the statements at issue are actually false, the prosecution knew the statements were false, and the statements were material. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998). The falseness of testimony is not, however, established simply by pointing to contradictory testimony from witnesses, inconsistencies within a witness's testimony, or conflict between reports, written statements and the trial testimony of witnesses. Rather such matters simply go to the credibility of the witness. *See Koch*, 907 F.2d at 531 (contradictions or inconsistencies in trial testimony are to be resolved by trier of fact and do not suffice to establish testimony was false); *Martinez-Mercado*, 888 F.2d at 1492 (omission of facts from reports and written statements not adequate to establish perjury occurred, rather omission goes to credibility of witnesses); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (inconsistencies between pretrial and trial testimony do not, standing alone establish perjury or put prosecution on notice of possible perjury).

Additionally, prosecutorial misconduct may constitute a denial of due process if the trial was rendered fundamentally unfair as a result. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (appropriate standard of review for claim of prosecutorial misconduct on writ of

habeas corpus is narrow one of due process); *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (habeas court reviews claim of prosecutorial misconduct to determine whether trial was so infected with unfairness as to make resulting conviction a denial of due process).  A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted.  *Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

### 1.  Testimony of Victim

Critchley first complains that the victim, Angela Critchley ("Angela") testified at the original trial that she made an initial outcry to her grandmother, but during the second trial she testified her initial outcry was to her mother.[3]  According to Petitioner,[4] during the first trial the prosecutor asked Angela:

Q:  Your Nanny is your grandmother?

A:  Yes, sir.

Q:  Did anybody else in the house know this was happening to you?

A:  My Nanny did.

(Pet. Memo. at 19).  During the second trial, Angela was specifically asked by the prosecutor:

---

[3] Petitioner also complains the victim testified without having been placed under oath.  However, as he acknowledges, the trial record reflects that she was qualified as a witness prior to taking the stand.  (Rep. Rec. 3 at 33,  37).  Further, Critchley has not cited any authority which establishes testimony which is not provided under oath is perjured.

[4] The state court records provided to the Court by Respondent do not include a record of the testimony from the first trial.  Respondent suggests no transcript was prepared because there was no direct appeal from the first trial.  Accordingly. for the purposes of this habeas petition, the undersigned will accept Critchley's recitation of the testimony  from the first trial in his supporting memorandum as accurate.

> Q:  Did you tell your Nanny what had happened?
>
> A:  No.  I went straight to my mother.

(Rep. Rec. 3 at 59).

Critchley maintains Angela's testimony was clearly perjury, as it was not consistent with her testimony during the first trial and was rebutted by the testimony of Dorothy Stallions ("Stallions"), Critchley's mother and Angela's "Nanny."  According to Petitioner, the prosecutor asked Stallions during the first trial:

> Q:  At any time during that weekend, did Angela come to you and tell you that Philip Critchley had assaulted her in any way?
>
> A:  She certainly did not.
>
> Q:  She never told you that?
>
> A:  And if she did, I would've been the first to call the law.

(Pet. Memo. at 19).

Contrary to Critchley's characterization, the testimony he cites does not establish that the prosecutor knowingly presented perjured testimony.  Specifically, during the first trial Angela did not testify that she made an actual outcry to her Nanny.  Rather, she testified her Nanny knew of the assault.  This statement is not necessarily contrary to her testimony during the second trial.  Nor would a contradiction between the testimony of Stallions and Angela necessarily establish perjury.  As noted above, such inconsistencies merely go to the credibility of the witness.  *See Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002) (perjured testimony not established where testimony is simply challenged by another witness or is inconsistent with prior statements).

10

Petitioner also complains that Angela's testimony concerning her preparation for her trial was perjured. Specifically, he points out Angela testified during the second trial that people had told her what to say when she testified. (Rep. Rec. 3 at 35-36). After taking a break, Angela further testified no one had told her to say anything in court that she thought was a lie, didn't agree with or thought was right. (*Id*. at 36). Angela subsequently denied talking to anyone, including either of the prosecutors or the police, about what words to use in court. (*Id*. at 50-51).

Critchley contends Angela's testimony had to be perjured because she both admitted and denied talking to anyone about the case prior to trial. Again, Petitioner has simply cited to inconsistencies within the testimony of an individual witness. This type of inconsistency does not rise to the level of perjury. More significantly, the first two pieces of testimony he cites were given during a voir dire examination of Angela, outside the presence of the jury. Thus, those inconsistencies cannot have been material to the jury's verdict.

Critchley next points to testimony from Angela during the second trial concerning the circumstances surrounding the assault. Angela testified she was assaulted by Critchley in the bathroom. The prosecutor then asked:

> Q. Well, was anybody else in the bathroom with you when that happened besides your dad?
>
> A. Adam was watching TV.
>
> Q. Adam was watching TV?
>
> A. (Nods head).
>
> Q. Where was he watching TV at?
>
> A. In the bedroom.

> Q.  In the bedroom? Okay. Where was everybody else; do you know?
>
> A.  My Nanny was in her room dressing for work.

(Rep. Rec. 3 at 35-36).  On cross-examination Angela was asked:

> Q.  Did you get up at all in the night?
>
> A.  To go to the restroom.
>
> Q.  And when you got up, was the TV on or off?
>
> A.  It was off when I got up.
>
> Q.  Are you telling these people that all this bad stuff happened to you when you got up to go to the restroom?
>
> A. Yes.

(*Id*. at 55).

Contrary to Petitioner's belief, the undersigned does not find the minor inconsistency in Angela's testimony concerning whether the television was on or off to be material.  Nor, again, is this type of minor inconsistency properly characterized as perjury.

Petitioner attempts to bolster his claim of the prosecutor's knowing presentation of perjury by Angela by citing to the testimony of Dr. George Parker ("Parker"), a psychologist who interviewed Angela before trial and observed her trial testimony.  Parker testified Angela was moderately mentally retarded.  (*Id*. at 106).  He further testified Angela "was significantly impaired in her ability to relate events" and described some of her answers as "outright inconsistencies, diametrically opposed answers."  (*Id*. at 108).  Parker also stated Angela was more likely than other twenty-three year olds to be susceptible to suggestion and to provide answers people would want to hear.  (*Id*. ).

Again, contrary to Petitioner's belief, the testimony of Parker, which was presented by defense counsel, does not bolster his claim.  Rather than establishing Angela's testimony was deliberately false, Parker's testimony provides some explanation for the minor inconsistencies in her testimony.  Thus, the jury was presented with ample opportunity to make a determination as to the credibility and weight to give Angela's testimony.  Accordingly, Critchley has not shown he is entitled to habeas relief on this basis

### 2. Testimony of Victim's Mother

Petitioner also challenges the testimony of Angela's mother, Annie Ruiz ("Ruiz"), as perjured.  Critchley's challenge focuses on the testimony of Ruiz concerning the clothes Angela was wearing, specifically her underwear, and another pair of underwear Angela brought back from Critchley's house.

On direct examination, Ruiz testified that State's exhibit one was Angela's blue underwear. (Rep. Rec. 3 at 81).  Ruiz further stated the underwear had been in Angela's possession when she came home from Critchley's house.  (*Id*.).  Ruiz testified that, when she and Angela went to the hospital after Angela's outcry, she gave the underwear to the ER nurse and doctor.  (*Id*. at 81-82).

According to Petitioner, Ruiz' testimony changed on cross-examination.  Ruiz was asked by defense counsel:

> Q. And is it your testimony that you gave the panties that Angela was wearing to a nurse who, in turn, gave it to Sheriff Elsbury?
>
> A. Yes.
>
> Q. So if Sheriff Elsbury or another law enforcement officer testifies that they, in fact, removed the blue panties from Angela, they would be incorrect?
>
> A. Well, there was two pair of underwears.  There was a white pair and a blue pair.

13

Q.  What color were the underpants that Angela was wearing when you took her on February 23rd, 1997, to the Fredericksburg Emergency room?

A.  I'm not sure which one, if it was the blue one or white one.  It's been four years. I don't know.

Q.  All right. Fair enough. And you worked as a jailer for -- is that a Blanco County jailer?

A.  Yes, I did, jailer and dispatcher. . . .

Q.  Okay.  And as a jailer, you had occasion to have contact with law enforcement people and you learned something about law enforcement procedures?

A.  Yes, I did.

Q.  And is that what caused you to remove the panties that Angela was wearing and put them in a bag?

A.  Yes.

Q.  Okay.  And what did you do with the rest of the clothes?  Did you put them in the same bag?

A.  They all went – they went to the – as evidence.

Q.  I understand that, but were they all in the same bag?

A.  Yes, they were.

Q.  So the panties could make contact with the sweatshirt that she was wearing, also?

A.  Yes. . . .

Q.  You don't remember what color the panties were, whether they were blue or white?

A.  There was some blue ones and some white ones. There was both pair.

Q.  All right. And you don't know which was which?

A.  I don't know which one she had on.  I just know that she had blue and white.

14

Q.  And you don't know the color of the panties that were removed from her in the emergency room either, do you, whether they're the blue or the white?

A.  I don't know if they were the blue or white, but I know that she – she had two pairs, one pair that she wore that was in that bag then the other pair that she had on the body.

(Rep. Rec. 3 at 84-86).  Further, according to Petitioner, Ruiz testified during the first trial that she hand carried the blue pair of underwear to the hospital and that Angela was wearing the white pair. (Pet. Memo. at 29).

Although Critchley maintains the discrepancies in Ruiz' testimony concerning which pair of underwear were worn by Angela and which were merely taken to the hospital constitutes perjury, the undersigned disagrees.  Ruiz did equivocate on cross-examination as to which pair Angela was wearing.  But she was clear and consistent that the two pair of underwear worn by Angela during the weekend in question were both taken to the hospital and turned over to the police.  Petitioner has not shown Ruiz' uncertainty as to which pair was worn and which was carried was a deliberate falsehood on her part.  *See Beltran v. Cockrell*, 294 F.3d 730, 735 (5th Cir. 2002) (grant of habeas relief based on use of perjured testimony requires showing testimony was actually false).  *See also Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002) (perjured testimony not established simply where testimony is inconsistent with prior statements).  Nor has he shown the discrepancy in her testimony was material to the outcome of this case.  Accordingly, Critchley has not shown he is entitled to federal habeas relief on this basis,

### 3.  Testimony of Sheriff's Deputy

Petitioner next challenges the testimony of Deputy Deborah J. Elsbury ("Elsbury").  Elsbury testified one of her duties as a deputy was to interview the victims of sexual assaults.  (Rep. Rec. 3

at 111).  Elsbury was shown State's exhibit one and testified the exhibit was a pair of panties from

Angela.  Elsbury was asked by the prosecutor:

> Q.  Did you observe those panties coming off of Angela Critchley?
>
> A.  Yes, ma'am, I did.
>
> Q.  Okay. And took the panties off Angela Critchley?
>
> A.  The nurse at the time --
>
> Q.  Okay.
>
> A.  Actually, Angela took them off and handed them to the nurse and she puts them in the bag.
>
> Q.  And when the nurse puts them in the bag, what did she do?
>
> A.  Well, she seals it up and puts the patient's name on it.
>
> Q.   So these had previously been sealed and they've been since opened; is that correct?
>
> A.  That's what it appears, yes, ma'am.
>
> Q.  Okay. And once the nurse sealed it, who did she give it to?
>
> A.  She gave it to me.
>
> Q.  Okay. And how do you know that?
>
> A.  My name is on the card where it states that this was given to me, "D.J. Elsbury."

(*Id*. at 116-17).

According to Petitioner, this testimony directly contradicts testimony given during the first

trial which established Angela wore a white pair of panties to the hospital.  (Pet. Memo. at 31).  He

also point out Elsbury testified at the first trial that she did not recall the color of the underwear worn

16

by Angela to the hospital.  *Ex parte Critchley*, No. 52,298-03 at 102.[5]  He further points out Ruiz

testified at the second trial that two entire sets of clothing were submitted as evidence.  (Rep. Rec.

3 at 94-95).  Critchley concludes this testimony is material as it makes clear there was no way to

confirm the chain of custody of State's exhibit one.

This claim fails for two reasons.  First, and most significantly, Critchley has not cited to any

specific falsehood of Elsbury.  At trial, she testified the nurse removed Angela's underwear and

handed it to Elsbury.  Whether or not she independently remembered the color of the underwear does

not render her testimony concerning her actions with the underwear false.  Second, to the extent

Petitioner is arguing Elsbury's testimony allowed the admission of State's exhibit one without a

proper foundation, he attacked the admission of the exhibit in his direct appeal.  The appellate court

rejected the claim.  In so doing, the appellate court specifically noted the discrepancies in the

testimony as to which pair of underwear were worn by Angela to the hospital, but then stated:

> In either event, it was undisputed that the panties were worn by the complainant
> during her visit with appellant and delivered to the police at the hospital. The panties
> remained in a sealed evidence bag from the time they were received by the deputy at
> the hospital until the bag was opened at the laboratory, and there was no evidence
> that the panties could have been accidentally or deliberately contaminated with
> appellant's semen.

*Critchley,* 2001 WL 1583662, at *2.  Petitioner has failed to rebut this analysis and conclusion

herein.  Accordingly, he has not shown Elsbury's testimony was either false, or material.  Critchley

is not, therefore, entitled to habeas relief on this basis.

_____

[5]As noted above, a copy of the transcript of the first trial was not provided to this Court.  The
cited excerpt was included by Critchley in his third application for state habeas relief.

### 4.  Testimony of DNA Analyst

Petitioner also challenges the testimony of the prosecution's DNA expert Wilson Young ("Young").  According to Critchley, during the first trial a different DNA expert testified in pertinent part:

> Another test that we do is called RFLP.  It stands for restriction fragment length polymorphism.  This is normally called DNA fingerprinting in the media.  We like to call it DNA profiling.  This is what gives you the different bar codes.  It's very discriminating.  It gives you the 1 in 5.5 billion.  It's very discriminating.  Those are the different procedures that we have for the Texas DPS Crime Lab in Austin.

(Pet. Memo. at 33).  During the second trial Young was asked by defense counsel:

> Q.  What is band shifting?
>
> A.  Band shifting refers to [an] older DNA Technique called RFLP that is -- was not employed in this case and is no longer employed by the Department of Public Safety.

(Rep. Rec. 4 at 69).

Petitioner contends although the two experts both work for the same lab, they testified differently as to the testing techniques that were used by the lab.  He characterizes this inconsistency as perjury.  Once again, the undersigned disagrees.  Approximately two and one half years elapsed between the first and second trials.  It is not unreasonable to believe that scientific techniques used in DNA testing would have changed in that time period.  Further, Critchley has cited to no testimony which establishes the RFLP technique was used in this case.  Indeed, Young testified it was not.  Accordingly, Petitioner has failed to show the purported discrepancy in testimony is in any way material to his case.  He is thus not entitled to habeas relief on this basis.

### 5.  Testimony of Police Detective

Petitioner finally challenges the testimony of Detective Jeri Skrocki ("Skrocki").  According to Critchley, Skrocki testified that she went to the residence where the assault allegedly took place and seized bedding.  He contends the evidence was thereafter used to obtain the indictment charging him.  Petitioner further maintains the file of defense counsel does not contain any warrant or other evidence indicating permission was given to Skrocki to undertake the search.  He thus concludes her testimony was perjured.

A review of the trial transcript reveals no testimony by Skrocki concerning a search or seizure of bedding from the home where the assault allegedly took place.  (Rep. Rec. 3 at 145-73).  Accordingly, Petitioner has failed to substantiate his claim that the jury was presented with perjured testimony from Skrocki.  He is, therefore, not entitled to habeas relief on this basis.

### D.  Sufficiency of the Evidence

Critchley further contends he is entitled to federal habeas relief because the evidence is insufficient to support his conviction.  Petitioner maintains Angela's underwear was admitted without a proper chain of custody and thus could not be considered as evidence.  He further claims other evidence could not be considered because it was not admitted in the first trial and its admission in the second trial violated his protection against double jeopardy.  Finally, Critchley asserts trial testimony showed his case was not properly investigated.  Respondent argues this claim is procedurally barred from review in this action because Petitioner did not properly present it to the highest state court for review.

Texas law precludes a defendant from challenging the sufficiency of the evidence in an application for writ of habeas corpus.  *Ex Parte Grigsby,* 137 S.W.3d 673, 674 (Tex. Crim. App.

2004); *Ex parte McClain,* 869 S.W.2d 349, 350 (Tex. Crim. App. 1994).  A state prisoner who fails to present such a claim to the Texas Court of Criminal Appeals in a petition for discretionary review is procedurally barred from raising the issue in state court and cannot obtain federal habeas relief on that basis.  *See West v. Johnson,* 92 F.3d 1385, 1398 n.18 (5th Cir. 1996) (noting Texas Court of Criminal Appeals has long held sufficiency of evidence may not be raised in state habeas); *Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (petitioner's failure to raise sufficiency of evidence on direct appeal constituted procedural default under state law).  *See also Sawyer v. Whitley,* 505 U.S. 333, 338, 112 S. Ct. 2514, 2518 (1992) (federal court may not consider merits of habeas claim if state court has denied relief due to procedural default); *Ellis v. Lynaugh,* 873 F.2d 830, 837-38 (5th Cir. 1989) (same).

A review of the state records reveals Petitioner did not raise his attack on the sufficiency of the evidence in his direct appeal.  Thus, he presented the issue of sufficiency of the evidence for the first time to the Texas Court of Criminal Appeals in his state habeas application.  This is insufficient to preserve this issue for federal habeas relief.  *See Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006) (district court correctly held Texas's procedural bar precludes federal habeas review of sufficiency argument raised for first time in state habeas application); *Kittelson v. Dretke*, 426 F.3d 306, 317 n.26 (5th Cir. 2005) (noting under Texas law, prisoner cannot seek habeas review of sufficiency of evidence claim that was available but not raised on direct appeal).  Accordingly, the undersigned finds Petitioner is not able to seek relief on this claim in this action.

### E.  Ineffective Assistance of Counsel

Finally, Critchley maintains he received ineffective assistance of counsel during the hearing on the motion for new trial, at trial and on appeal.

### 1. Applicable Law

To establish an ineffective assistance of counsel claim, Critchley must meet the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). He must demonstrate both that: (1) his counsel's performance was deficient, including "errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment"; and (2) his counsel's "deficient performance prejudiced the defense." *Id*. at 687, 104 S. Ct. at 2064; *United States v. Walker*, 68 F.3d 931, 933 (5th Cir. 1995).

To establish deficient performance, Critchley must show his counsel's acts were not "reasonable in light of all the circumstances," and he must overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *See Haese*, 162 F.3d at 364 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064); *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995) (strong showing required by defendant to place counsel's conduct outside wide range of reasonable professional assistance). To demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Haese*, 162 F.3d at 364 (citing *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998)); *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990).

Critchley must show more than that a different result would have been "possible." *Cockrum v. Johnson*, 119 F.3d 297, 302 (5th Cir. 1997). He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). When a defendant fails to meet either requirement of the *Strickland* test, her ineffective assistance of counsel claim is defeated. *Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993). The Fifth Circuit "has also made clear that

counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Likewise, counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995).

### 2.  Discussion

Petitioner first maintains his counsel was ineffective during the motion for new trial proceedings.  Specifically, he claims counsel was not knowledgeable about facts regarding the first trial due to the lack of a trial transcript and that counsel was not at the first trial.  As a result, Critchley contends his counsel was handicapped during the hearing on the motion and had to rely on the judge's memory of the trial.

As an initial matter, Respondent contends this claim fails because it is not clear that the right to counsel attaches during the time period of a motion for new trial.  Not surprisingly, Petitioner disagrees.  This dispute need not, however, be resolved.  As Respondent also argues, Petitioner has not, and cannot, show he was prejudiced as a result of counsel's purported inadequacies.  As discussed above, Critchley was granted a new trial.  Accordingly, he cannot succeed on a claim of ineffective assistance of counsel on this ground.

Petitioner next claims his attorney was ineffective during trial.  Specifically, he asserts his counsel erred in failing to expose and impeach the perjured testimony of Angela, Ruiz and Elsbury presented by the prosecution.  This claim fails for several reasons.  First, the undersigned has previously rejected Critchley's claim that false testimony was presented at trial.  Thus, he cannot establish a basis on which counsel could have objected.  Second, the undersigned has also concluded any inconsistencies in the testimony were not material.  Thus, Critchley cannot show any failure by counsel to object resulted in prejudice.

22

Finally, a review of the record reveals counsel did attempt to challenge the testimony Critchley contends was perjured. Counsel objected to the admission of State's exhibit one on the ground that the chain of custody had not been adequately established by Elsbury, to no avail. (Rep. Rec. 3 at 82, 117-18). Counsel also moved to permit the jury to hear Ruiz' testimony from the prior trial to show the alleged inconsistencies. The trial court rejected the motion. (Rep. Rec. 4 at 79-82). Further, during closing argument counsel urged the jurors to note the discrepancies in Angela's testimony, and the possible problems with the chain of custody. (Rep. Rec. 5 at 33-34, 40-42). Critchley has failed to show what additional steps counsel should have or could have taken. Accordingly, Petitioner has failed to show his trial counsel was ineffective at trial.

Critchley finally maintains he received ineffective assistance of counsel on appeal. Petitioner argues his counsel should have raised additional issues concerning the chain of custody for State's exhibit one and should have argued his conviction was barred by double jeopardy.

In his first challenge to the effectiveness of appellate counsel, Critchley admits counsel challenged the chain of custody and thus admissibility of State's exhibit one. However, he argues counsel should have specifically cited the inconsistent testimony of Ruiz as to which pair of underwear was worn by Angela to the hospital.

The record clearly contradicts this claim. In the appellate brief counsel for Critchley specifically cited the testimony of Ruiz and her uncertainty concerning which clothes were worn by Angela to the hospital. He further argued this inconsistency went directly to the flawed chain of custody and thus inadmissibility of the evidence. (Appellant's Brf. at 2, 6-7). This discrepancy was specifically noted by the appeals court which stated "[t]he complainant's mother was unsure whether the complainant was wearing the panties or brought them home with her following her visit with

[Critchley]" but concluded the discrepancy was immaterial because there was no evidence the panties were in any way improperly handled thereafter. *Critchley,* 2001 WL 1583662, at *2. Petitioner has thus failed to establish any deficiency on the part of his appellate counsel on this basis.

As to Petitioner's second challenge, the undersigned has previously concluded Critchley's conviction was not barred by his prosecution in the first trial of this case. Counsel could not be ineffective for failing to raise what would have been a meritless point on appeal. *Koch*, 907 F.2d at 527 (no requirement to make futile objections); *Sones*, 61 F.3d at 415 (counsel not deficient for failing to raise frivolous point). Accordingly, the undersigned concludes Critchley has failed to show he is entitled to federal habeas relief on the ground that his counsel was ineffective.

## VI. RECOMMENDATION

The Magistrate Court recommends the District Court **DENY** Petitioner's Petition For a Writ of Habeas Corpus By a Person in State Custody.

## VII. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court

24

rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a [certificate of appealability] should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## VIII.  OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of June, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

26